FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 JAN 25 AM 11: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

IRA DENT,                           )
                                    )
     Plaintiff,                     )
                                    )
v.                                  )    CV 00-BU-1227-E
                                    )
FEDERAL   MOGUL                     )    **ENTERED**
CORPORATION,                        )
                                    )    JAN 25 2001
     Defendant.                     )

## Memorandum Opinion

In the above-styled action, Plaintiff Ira Dent claims that his former employer, Defendant Federal Mogul Corporation, terminated his employment because of race and/or sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Now before the Court is Defendant's motion for summary judgment, filed December 8, 2000. (Doc. No. 14). The parties have filed evidence and briefs in support of their respective positions on the motion, which is now ripe for decision. The Court concludes that Defendant's motion for summary judgment is due to be GRANTED.

### I. BACKGROUND

Defendant manufactures and sells automotive parts. Plaintiff, an African-American male, began his employment with Defendant in March 1988. He worked at Defendant's distribution center located in Jacksonville, Alabama, where automotive parts are warehoused and then distributed to retail locations. He worked there until November

19

11, 1999, the effective date of his termination. The parties do not dispute that the decision to terminate Plaintiff was made by Tamra Perry, Defendant's Human Resources Manager. According to Defendant, Plaintiff was fired for violating its company policy against gambling, in connection with his admittedly running a weekly football "squares" board at work. At all times relevant to this action, Defendant's employee handbook expressly provided that "Gambling on Company property" was an example of "unacceptable conduct" for which disciplinary action, "up to and including termination," might be imposed. Plaintiff admitted to Defendant's security representative during an interview on November 11, 1999, prior to his termination that he was running a weekly "squares" board that football season and that he knew that the employee handbook prohibited gambling on company premises. However, Plaintiff claims that he also stated to the representative that other employees at the Jacksonville facility had operated squares boards and that "almost everyone" at the plant participated in such pools, including managerial employees. In addition, Plaintiff alleges that employees both male and female, both black and white had been operating boards of their own at the plant. Thus, Plaintiff claims that, notwithstanding anything stated in the employee handbook, Defendant's management had long known about and tolerated the squares boards.

Plaintiff also alleges that Perry herself had previously known that he was involved in the football squares boards, and that a supervisor, Steve Cantrell, had related to him that Perry had indicated on that occasion that what he did on break was his own business, and Cantrell said that no one "paid any attention" to the policy against gambling as it pertained to the boards. Perry acknowledges in her deposition that a supervisor, Mike Spitzmiller, brought to her a copy of a squares board with Plaintiff's name on it in November 1998[1] and that prior to her becoming Human Resources Manager in about

---

[1] Perry recalls that Spitzmiller brought her a betting sheet with Plaintiff's name on it in late 1998. The Court would note that Plaintiff, by contrast, indicates in his deposition that

March or April 1998, the football pools had been allowed and that managers had even participated. Perry alleges, though, that after she received the betting sheet with Plaintiff's name on it, she had meetings both with Plaintiff privately and with all employees, at which she stated that while the squares boards had been tolerated in the past, she was now responsible and that they could not continue.[2] Plaintiff disputes this, as he claims that, prior to his termination, neither Perry nor any other management representative ever warned him individually or in an employee meeting that the football squares were to cease.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court

---

Spitzmiller brought this pool sheet to Perry during "Alabama/Auburn week of 1999." Plaintiff's Depo. at 36 (emphasis added). However, the Court takes judicial notice of the fact that the 1999 contest between Alabama and Auburn was played on November 20th. See http://www.rolltide.com/fbo/fbc/99schedule.html. Such game was, therefore, played more than a week after Plaintiff was suspended for gambling by Defendant on November 11, 1999. As it is undisputed that Plaintiff suffered no discipline in the wake of Perry's receipt of the Alabama/Auburn pool slip from Spitzmiller, it is clear from the record evidence that the slip was brought to Perry in 1998, as she recalls.

[2]Perry and Plaintiff each provided deposition testimony concerning the discovery of this football game board in November 1998. Nonetheless, Plaintiff argues that the Court may not consider such deposition testimony because Defendant has not produced a copy of the game board itself. It is true that a Court is not to consider materials that cannot be reduced to admissible form when deciding a motion for summary judgment. See Celotex, 477 U.S. at 324-327; Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999). However, the Court fails to see how the deposition testimony discussing the board could be rendered inadmissible because the board itself has not been produced. Plaintiff acknowledges that his name appeared on the board at least in a "number drawing" capacity, and Perry's recollection of what was on the board is plainly relevant to her knowledge and state of mind regarding what disciplinary actions she took or did not take after the board was brought to her attention.

concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

### III. DISCUSSION

Title VII makes it unlawful for an employer to discharge an employee because of race or sex. See 42 U.S.C. § 2000e-2(a)(1). Plaintiff attempts to prove that he was terminated based on race by using circumstantial evidence.[3] When a plaintiff offers circumstantial evidence to prove a Title VII claim alleging disparate treatment, courts use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine,

---

[3]Plaintiff does not contend that he might offer direct evidence or statistical evidence of race discrimination, the other avenues by which he might have attempted to prove his Title VII discrimination claim. See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

450 U.S. 248 (1981). Under this framework, the plaintiff must first establish a prima facie case of discrimination, which creates a presumption of discrimination. The employer must then produce sufficient evidence to indicate that it took the employment action for one or more legitimate, nondiscriminatory reasons. If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are merely a pretext for unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802-05; Burdine, 450 U.S. at 252-256.

In order to establish a prima facie case, a plaintiff must present "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion...." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). Plaintiff may prove a prima facie case on a Title VII claim alleging disparate treatment by showing "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000) (citing Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997)). Of the foregoing four elements, Defendant challenges only the third, whether Plaintiff can prove that similarly situated employees of another race or gender were treated more favorably than he was.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. Thus, in order to be considered "similarly situated" for purposes of proving a prima facie case, an employee allegedly receiving lesser or no discipline than the plaintiff must have been involved in or accused of the "same or similar" misconduct, Holifield, 115 F.3d at 1562, and operated under the same workplace

rules or policies, see Lathem v. Department of Children and Youth Services, 172 F.3d 786, 793 (11th Cir. 1999). It generally also must be shown that the plaintiff and a would-be comparator dealt with the same decision-making supervisor, see Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306, 1312 n.7 (11th Cir.), opinion superseded in other part on denial of reh'g, 151 F.3d 1321 (11th Cir. 1998); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989).

The Court concludes that summary judgment is warranted on both of Plaintiff's Title VII claims because Plaintiff has failed to identify an employee of another race or gender who was both treated more favorably than and "similarly situated" to him, for purposes of establishing a prima facie case. In his brief, Plaintiff does not identify by name any specific employee as being similarly situated. Nonetheless, Perry did know the identity of a number of people, including Plaintiff, who participated in football gambling during the 1998 football season. However, no one, again including Plaintiff, was terminated or disciplined at that time. Thus, as Defendant argues, Plaintiff was treated exactly the same as every other employee who was known to have participated in football gambling in 1998. It is only after Plaintiff admitted that he continued to gamble during the football season in 1999 that he was terminated. Plaintiff has alleged that other employees also gambled during the 1999 season. However, Perry testified that she is unaware of the identity of any employee who continued to gamble on the football squares during the 1999 season. Plaintiff does not dispute that a second squares board found in 1999 was "in code" such that the names of the participants could not be determined. Plaintiff also does not dispute that he refused to reveal the names of others involved in the football squares gambling. In order to indicate that other employees outside of a protected classification were similarly situated and treated more favorably, it is not enough to show that other employees engaged in the same or similar misconduct but were never disciplined simply because they were not caught. See Bogle v. Orange County Bd.

of County Com'rs, 162 F.3d 653, 658-59 (11th Cir. 1998). The Eleventh Circuit Court of Appeals has also recently suggested that an employee who admits to his employer that he has violated a work rule may not be similarly situated to an employee who might be suspected by the employer as having committed the same or a similar violation. See Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000) (finding that the plaintiff and another employee were not similarly situated because "[w]hereas [the plaintiff] has always freely admitted having taken $10.00 from the cash register, the other employee has never confessed to taking county funds for personal use; at worst, the would-be comparator has admitted to temporarily misplacing funds."). Plaintiff's bald assertions that relevant decisionmaking employees of Defendant simply must have known about ongoing gambling in 1999 is insufficient to create a genuine issue of material fact so as to avoid summary judgment. Because Plaintiff has failed to identify similarly situated employees outside of his protected racial and gender classification who were treated more favorably, his Title VII race and sex discrimination claims must fail for a lack of a prima facie case. Jones, 137 F.3d at 1311.

Although termination may, to some, seem a draconian response given the level of Plaintiff's offense, the reasonableness of Defendant's disciplinary policies is not a consideration in determining whether Plaintiff has produced sufficient evidence to prevail on his claims of race and sex discrimination. See Abel, 210 F.3d at 1339 n.5. Unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII. Coutu v. Martin County Bd. of County Com'rs, 47 F.3d 1068, 1074 (11th Cir. 1995). As the Eleventh Circuit has stated before, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendant's motion for summary judgment (Doc. No. 14) is due to be GRANTED, as the Court has determined that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Plaintiff's claims, which allege race and sex discrimination in violation of Title VII, are due to be DISMISSED WITH PREJUDICE. A separate order will be entered.

IT IS SO ORDERED, this 24th day of January, 2001.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE